C. Alton WADE, Jr., et al.

v.

Robert P. KANE et al.

Civ. A. No. 78–206.

United States District Court,
E. D. Pennsylvania.

March 29, 1978.

C. Alton Wade, Jr., in pro per.

Maria Parisi Vickers, Philadelphia, Pa., for defendants.

## ADJUDICATION

JOSEPH S. LORD, III, Chief Judge.

Plaintiffs, who are confined at the State Correctional Institution at Graterford, Pennsylvania, either provided or received legal services from an in-prison law clinic which was operated by inmates. Plaintiffs charge that the closing of the law clinic by prison and state authorities deprived them of their constitutional rights. They seek temporary and permanent injunctive relief and money damages pursuant to 42 U.S.C. § 1983. A hearing on preliminary injunctive relief was held on February 16 and 17, 1978, following which I issued a preliminary injunction from the bench. I now make the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The plaintiffs are inmates and residents of the A Block at the State Correctional Institution at Graterford, Pennsylvania ("Graterford"). The defendants are Robert P. Kane, Attorney General of the Commonwealth of Pennsylvania; William B. Robinson, Commissioner of the Bureau of Correction of the Pennsylvania Department of Justice; Julius T. Cuyler, Superintendent of Graterford; and Daniel T. Sims, Deputy Superintendent of Treatment at Graterford.

2. On or about January 27, 1976, Graterford inmates and others formed the Para-Professional Law Clinic ("Clinic") as a nonprofit corporation under Pennsylvania law for the purpose of providing legal services to Graterford inmates.

3. The Clinic has its main office near the central prison facilities at Graterford. The Clinic also has a library of legal reference materials in a separate room of the prison school, which is also near the central prison facilities. This area is accessible on a limited basis to all inmates of Blocks A, B, C and D. Inmates on Block E are not permitted access to these facilities.

4. The Clinic made these legal reference materials available for use in its law library to all Graterford inmates (except Block E inmates, whom the prison denied access to this area), but only Clinic members could remove the books from the Clinic's law library.

5. The Clinic also maintains five block offices in converted cells, one in each of Blocks A, B, C, D and E, in which case files are maintained. Case files pertaining to the cases of inmates residing on each block are kept in that block's Clinic office. There are now between 150 and 175 active files in the A Block office. In order for these files to be processed, Clinic members must have access to the block offices.

6. Clinic "members" are persons who provide legal assistance to other Graterford inmates as part of the Clinic program. There are approximately fifteen (15) to sixteen (16) active members of the Clinic at any time.

7. Clinic members work on both criminal and civil cases. The Clinic institutes and prosecutes Post Conviction Hearing Act cases, habeas corpus petitions, motions for new trials, direct appeals, motions in arrest of judgment, civil rights actions, misconduct hearings and any other actions pertaining to inmates' welfare. The Clinic also helps inmates to prepare letters to courts and to outside counsel, and to understand communications from courts and outside counsel to inmates.

8. Plaintiffs Wade, Vorhauer and Flynn are members of the Clinic. They have provided legal services to inmates of Blocks B, C, D and E in addition to inmates housed in Block A.

9. The services of Clinic members are offered without charge, although the members will accept gratuities after the rendering of legal services from the prisoners whom they have helped. Payment of such gratuities is not, however, a condition upon which the availability of members' services is based, and the by-laws of the Clinic prohibit members from receiving compensation from inmates.

10. Before January 12, 1978, the Clinic office on A Block was open from 9:00 A.M. to 11:00 A.M., from 1:00 P.M. to 3:00 P.M.

and from 7:00 P.M. to 9:00 P.M. daily. Because it is located on the block, this office was readily accessible to A Block inmates during these hours.

11. Members of the A Block Clinic worked on cases from twelve to sixteen hours each day. The Clinic members were able to take files from the office into their cells and do additional work on inmates' cases while the Clinic was closed during the day and after the 9:00 P.M. closing of the office.

12. Graterford furnished the Clinic with writing supplies such as typewriter ribbons, writing paper and carbon paper for use in the legal representation of inmates.

13. Clinic members have provided on numerous occasions both adequate and successful legal representation for Graterford inmates who sought the services of the Clinic. Although much of the work of Clinic members involves the preparation of letters to courts, public defenders and government agencies, members of the Clinic have been involved in all stages of litigation on behalf of Graterford inmates.

14. In late 1977 plaintiff Wade performed legal services for plaintiff Madronal, including the filing of a state post-conviction action in the Court of Common Pleas of Allegheny County. On December 14, 1977, Judge Frederic Weir of that court wrote to plaintiff Wade, advising Wade that he would appoint a public defender in the case but stating that he thought Wade could represent Madronal more capably than a public defender.

15. Many of the inmates who have availed themselves of the services of the Clinic and of the plaintiff Clinic members are indigent. Therefore, they are unable to retain counsel and are unable to buy writing materials such as paper and pens.

16. Plaintiff Madronal, who has a sixth-grade education, is unable to prepare legal documents in his own case. Approximately eighty percent (80%) of the inmates who have sought the services of plaintiff Vorhauer as a Clinic member are unable to read and comprehend legal reference materials, and approximately thirty to fifty percent (30%–50%) are functionally illiterate.

17. Graterford inmates seeking to bring civil actions are unable on many occasions to obtain court-appointed counsel. In addition, inmates are generally unable to obtain appointed counsel to ascertain whether they have claims upon which any relief can be granted.

18. Plaintiff Diaz is one of approximately forty-five (45) Spanish-speaking inmates at Graterford, thirty-five (35) of whom cannot read or write English. Although he has been enrolled in and has attended English language classes at Graterford, Diaz is unable to read with comprehension law books printed in English or to write in English. Consequently, plaintiff Diaz and the other Spanish-speaking inmates at Graterford must have available the services of others to make use of legal reference materials.

19. Before January 12, 1978, Clinic members were compensated by the prison at a very low rate for their work in providing legal services to others.

20. By representing inmates at very low compensation from Graterford and without fee from the inmates, Clinic members' services enabled courts to avoid incurring the expense of appointing counsel in many cases.

21. Graterford officials have planned to initiate a program for the representation of inmates by law students. These plans provide for three or four law students to come to Graterford for three hours each Friday evening, and they would be available only while school is in session. The law students would be completely unavailable during examination periods and during summer vacations. Upon his or her graduation from law school, furthermore, a student who has been handling a case would probably sever his or her connection with it entirely. Such a law student program would fail to provide to plaintiffs and other Graterford inmates adequate assistance in preparing their cases.

22. At a meeting in December 1977 of Graterford administrators and Clinic members, defendant Sims informed the Clinic

members that the Clinic would be closed on February 15, 1978, and that open cases would have to be "terminated" by the Clinic.

23. On January 12, 1978, defendant Cuyler promulgated a memorandum stating that the work of the Clinic would be phased out and that the Clinic would remain open on a limited basis until February 15, 1978. According to the memorandum, no new cases or new business could be accepted by the Clinic during this phasing out period.

24. The defendant Cuyler was acting in his official capacity when he informed Clinic members of the closing and when he promulgated and circulated the January 12, 1978, memorandum.

25. After the promulgation of the January 12, 1978, memorandum, the Clinic block offices were padlocked on January 16, 1978, making Clinic members unable to gain access to case files.

26. Members of the Clinic have been able to obtain only limited access to the Clinic block offices to process the files in cases and other matters already in progress.

27. It is the intention of Graterford officials to assign the Clinic members to other work in the prison. If a Clinic member is assigned to another full-time prison job, it is unlikely that he will have the time or energy to perform legal services for other inmates.

28. On February 16, 1978, the defendant Cuyler modified his memorandum of January 12, 1978, and extended the final closing date of the Clinic to March 17, 1978. This extension applied only to the main office, however, and not to the block offices. Furthermore, the proscription against new cases and new business remained in force.

29. Graterford opened an institution-wide law library for the use of inmates ("Prison Library") on January 16, 1978.

30. The following legal materials are not available in the Prison Library: Federal Reporter, 2d Series; Federal Rules Decisions; United States Supreme Court Reports; Title 28 of the United States Code, §§ 2254 and 2255 and annotations thereto;

Title 19 of Purdon's Pennsylvania Statutes Annotated (Pennsylvania Criminal Procedure); Atlantic Reporter, 2d Series; many Pennsylvania case reporters; the Federal Rules of Criminal Procedure; the Federal Rules of Civil Procedure; and the Local Rules of Court for the United States District Courts for the Eastern District and Middle District of Pennsylvania.

31. The foregoing materials were, with the exception of most volumes of Federal Rules Decisions, in the Clinic's law library. Since the closing of the Clinic on January 16, 1978, Clinic members and other inmates have been unable to gain access to the Clinic's law library.

32. The "Recommended Collections for Prison and Other Institution Law Libraries," published by the Committee on Law Library Service to Prisoners of the American Association of Law Libraries (June 1976 revision), says that either the Federal Reporter, 2d Series, or the ALR Federal Cases and ALR Federal Quick-Index 2d edition are among the basic federal materials for state and federal prison law libraries. I find, to the contrary, that the ALR Federal Cases and Federal Quick-Index 2d edition are an unsatisfactory substitute for the Federal Reporter, 2d Series, because they do not contain many of the reported cases from the United States courts of appeals which a Graterford inmate pursuing either a criminal or civil case would need. A library for the use of prison inmates which lacks these materials is an inadequate law library.

33. Graterford inmates, including plaintiff Vorhauer, have requested additional books for the Prison Library. These requests have been denied, and the inmates have been told that the books in the Prison Library are the only ones that they are going to have. The librarian of the Prison Library, Terry L. Clark, testified that the Prison Library planned to replace volumes which had originally been in the Prison Library but are missing, including Title 19 of Purdon's Pennsylvania Statutes Annotated. At the time of the hearing, no volumes

had been replaced, nor had the Prison Library placed any requests or orders for replacement volumes.

34. The closing of the Clinic denied to plaintiffs Wade, Vorhauer and Flynn, as well as many other Graterford inmates, access to many legal references necessary to pursue their own and other inmates' cases.

35. The Prison Library staff consists of Clark, who has had two days of instruction in legal research from the state, and ten Graterford inmates, four of whom are legal reference aides. One of the legal reference aides has received the same two days of instruction that Clark has had; two others have some legal research experience at Graterford; and the fourth has neither legal research experience nor training. It appears that his only qualification is his ability to speak both Spanish and English.

36. The Prison Library contains no legal reference materials in Spanish.

37. The Prison Library staff will assist inmates in finding legal authority that is pertinent to their legal problems, but staff members are forbidden to give legal assistance or advice to inmates.

38. The Prison Library is housed in the general library for inmates at Graterford, which is located near the central prison facilities. This area is accessible to inmates only on a limited basis, in that an inmate must request from the library and receive a pass before he can leave his block and gain access to the central prison facilities. Because of the requirement of passes, it is extremely difficult for an inmate to coordinate his visit to the Prison Library with that of another inmate.

39. Because the Prison Library is in a part of the general prison library for inmates which is not completely separated, it is often noisy and not conducive to concentration or sustained thought.

40. Graterford has ceased since the closing of the Clinic to supply writing materials to indigent inmates.

41. The defendants have offered no justification whatsoever for the closing of the Clinic. They have demonstrated no benefit derived from its closing and no detriment wrought by its continued operation.

42. The order to phase out the Clinic has caused the plaintiffs and those who benefit from the services of Clinic members to suffer irreparable harm. Closing the Clinic entirely, *a fortiori*, would cause these persons further irreparable harm.

## DISCUSSION

■ According to the evidence presented at this hearing, the closing of the Clinic by Graterford officials deprives plaintiff and other Graterford inmates of their constitutional rights in at least three ways. The constitutional right involved is that of inmates to access to the courts, recognized in a long line of Supreme Court decisions. *See, e.g., Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The test of the adequacy of the facilities and resources made available to prisoners is whether they provide "meaningful access" to the courts. *Bounds v. Smith*, 430 U.S. at 823, 97 S.Ct. 1491, citing *Ross v. Moffitt*, 417 U.S. at 611, 612, 615, 94 S.Ct. 2437.

The most obvious violation, and the one addressed most fully at the hearing, is that of the right to an adequate law library, in the absence of adequate assistance from persons trained in the law, firmly established in *Bounds v. Smith, supra*. The program planned by Graterford officials would not provide adequate assistance from persons trained in the law on two grounds: it is obvious that the law students and library aides are not "persons trained in the law"; and further, their very limited numbers and effectiveness (the latter are forbidden by the prison to give legal advice) assure that their assistance could by no stretch of the imagination provide adequate access to the courts.

■ Plaintiffs and other Graterford inmates therefore have a constitutional right to an adequate law library. It is clear that the Prison Library is inadequate owing to its lack of recent Federal Reporters, the Pennsylvania Criminal Code and other materials. The hearing did not establish whether the Clinic's library is itself constitutionally adequate, but it was demonstrated that the Clinic made available to its members and other inmates (both directly and through representation by Clinic members) some reference books which would be part of an adequate law library. Both the phasing out and contemplated closing of the Clinic hence violate the constitutional rights of plaintiffs and others by denying them access to such legal reference materials.

■ Interrupting and terminating the Clinic's operations violate the constitutional rights of Graterford's inmates in another even more direct sense: inmates who are unable to perform their own legal research have a constitutional right to legal assistance from other inmates, in the absence of adequate assistance from lawyers, even where the prison makes available an adequate law library. This right was recognized in *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), where the Court held that a prison regulation prohibiting inmates from assisting one another in the preparation of writs and other legal papers violated the rights of prisoners who are unable to draft their own legal documents. The Court made clear the broad scope of this right in *Wolff v. McDonnell*, 418 U.S. 539, 570, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), where it observed that inmates who are either illiterate or unable to handle complicated disciplinary cases have a constitutional right to seek help from competent fellow inmates (or staff members)—even where there is an adequate law library. *See Bounds v. Smith*, 430 U.S. at 824 & n.10, 97 S.Ct. 1491. Similarly, in *Bryan v. Werner*, 516 F.2d 233 (3d Cir. 1975), the Third Circuit held that a regulation prohibiting an inmate-run law clinic from assisting inmates in filing suits violated their right of access to the courts, in the absence of reasonable alternatives for obtaining access. Keeping in mind that the judicial touchstone in this area is "adequate access to the courts", it is obvious that a prison library, even where it is adequate, is insufficient to provide that access for inmates who are illiterate or otherwise unable to do effective legal research.

Many of the inmates at Graterford are either functionally illiterate in English (including plaintiff Diaz) or unable to comprehend legal reference materials or to prepare legal documents (including plaintiff Madronal). These inmates have a constitutional right to legal assistance. The suggestion that they will receive adequate access from the Prison Library staff, which is forbidden to give legal advice, or from a few visiting law students is an absurd proposition. The phasing out and closing of the Clinic hence deprive plaintiffs and others whose rights they have standing to assert of their constitutional rights, and the reopening of the Clinic to new as well as existing cases is the only relief which will restore those rights. The relevant inquiry ·is whether there is practically any "alternative and readily available means of obtaining assistance of at least equal caliber" to that offered by the Clinic. *Bryan v. Werner*, 516 F.2d at 237. The answer is "no." Therefore, like the Supreme Court in *Wolff v. McDonnell*, I do not set forth the full breadth of the right of access as it applies to a right of fellow-inmate legal representation, 418 U.S. at 570, 94 S.Ct. 2963, nor need I do so. Closing the Clinic clearly makes any right of access to the courts a fantasy for many Graterford inmates; under these circumstances the continued existence of the Clinic is at the core, not the periphery, of the right of access.

While some of the Supreme Court's discussion in these cases suggests that these rights are inviolable under any circumstances, *Johnson* and *Wolff* both weigh the justifications offered by prison authorities for regulations burdening inmates' right of access to the courts. *See also United States ex rel. Wolfish v. Levi*, 406 F.Supp. 1243, 1247 (S.D.N.Y.1976) and cases cited therein. Here, however, the defendants have offered

absolutely no justification, economic or security-related, substantial or specious, for closing the Clinic.

■ I am acutely aware of the salutary doctrine that a federal court will not inject itself into the operation of a state prison or scrutinize decisions made by prison supervisors under ordinary circumstances. That doctrine gives way, however, when the constitutional rights of prisoners are either threatened or invaded. *Procunier v. Martinez*, 416 U.S. 396, 404–06, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Moreover, I need not consider at length the impact of *Bounds'* caveat that a variety of means might be employed by prison administrators to achieve meaningful access. 430 U.S. at 830–32, 97 S.Ct. 1491. I conclude that "*in fact* inmates are disadvantaged by being foreclosed from obtaining assistance from the clinic," *Bryan v. Werner*, 516 F.2d at 237, and thus that none of the suggested alternatives is sufficient. I further conclude that the programs planned by prison administrators for providing Graterford inmates with legal assistance, taken together, would not come close to providing a "constitutionally acceptable method to assure meaningful access to the courts." *Bounds v. Smith*, 430 U.S. at 830, 97 S.Ct. at 1499.

■ Finally, those Graterford inmates who are indigent have "indisputable" rights to be "provided at state expense with paper and pen to draft legal documents," *id.* at 824–25, 97 S.Ct. at 1496. These rights have been violated. Moreover, because "the State must, as a matter of equal protection, provide indigent prisoners with the basic tools of an adequate defense or appeal, when those tools are available for a price to other prisoners," *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971), the failure to make available writing materials and implements to indigent prisoners violates the Equal Protection Clause of the Fourteenth Amendment as well as the right of access to the courts. As a result, no justification offered by defendants could alter this conclusion of constitutional deprivation.

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and the parties in this case.

■ 2. Because plaintiffs Wade and Vorhauer have given legal advice and provided legal representation to inmates in Blocks A, B, C, D and E, they have standing to assert the constitutional rights of adequate access to the courts of the inmates in those other Blocks. They also have standing to assert the constitutional rights of indigent inmates, who are among those to whom they have provided legal services.

■ 3. The phasing out of the Clinic has denied plaintiffs Diaz and Madronal and other Graterford inmates housed in Blocks A, B, C, D and E of their constitutional rights of adequate access to the courts. The planned closing of the Clinic *in toto* would deny plaintiffs and other inmates housed in Blocks A, B, C, D and E of their constitutional rights of adequate access to the courts.

4. The defendants have failed to provide any justification sufficient to warrant the violations of the constitutional rights of the plaintiffs and of others of adequate access to the courts.

5. The failure of Graterford officials to provide writing materials to indigent inmates for use in the preparation of legal materials violates their constitutional rights of adequate access to the courts and of equal protection under the laws.

6. By depriving plaintiffs and others of their constitutional rights by acts done in their official capacity, defendants' actions are in violation of 42 U.S.C. § 1983.

7. The likelihood of plaintiffs prevailing on final hearing is great.

8. Plaintiffs are entitled to immediate preliminary injunctive relief.