451 F.Supp. 675 (1978)
UNITED STATES of America ex rel. John M. RATCHFORD
v.
Glenn R. JEFFES, Superintendent (Individually and in Official Capacity), State Correctional Institution, Dallas, Pennsylvania, Daniel Sims, Deputy Superintendent of Treatment (Individually and in Official Capacity), Graterford, Pennsylvania, Robert Wolfe, Administrative Assistant (Individually and in Official Capacity), State Correctional Institution, Graterford, Pennsylvania, Charles Batdorf (Mailroom Supervisor) (Individually and in Official Capacity), State Correctional Institution, Graterford, Pennsylvania, Maurice Talley, Paraprofessional Law Clinic, Inc., Graterford, Pennsylvania, Bebley Wells, Paraprofessional Law Clinic, Inc., Graterford, Pennsylvania, George Bradley, Paraprofessional Law Clinic, Inc., Graterford, Pennsylvania and Felix Mokychic (Individually and in Official Capacity), Captain of the Guard, State Correctional Institution, Graterford, Pennsylvania.
No. 77-1795.
United States District Court, E. D. Pennsylvania.
May 23, 1978.
*676 John M. Ratchford, pro se.
Margret E. Anderson, Asst. Atty. Gen., Philadelphia, Pa., for defendants.
LUONGO, District Judge.
John M. Ratchford, a prisoner confined at the State Correctional Institution at Graterford, Pennsylvania, filed this complaint pro se on May 25, 1977. Ratchford seeks both damages and equitable relief under the Civil Rights Act of 1871, as well as a declaratory judgment. Defendant Jeffes, Superintendent of the State Correctional Institution at Dallas, Pennsylvania, and the sole defendant named in the original complaint, moved for summary judgment. Ratchford filed a memorandum in opposition, and then moved for leave to file an "Amended and Supplemental Complaint." Defendant Jeffes has filed a memorandum in opposition to this motion. For the reasons hereafter stated, I conclude that Ratchford's motion should be granted, and that defendant Jeffes' motion for summary judgment should be granted in part and denied in part.
The facts of this case, viewed in the light most favorable to Ratchford,[1] may be stated as follows. On May 9, 1977, Ratchford, who was then a member of the Paraprofessional Law Clinic at Graterford, mailed a petition for a writ of mandamus to William Maute, an inmate at the Dallas facility. Maute apparently was supposed to sign the petition, have it notarized, and then return it to Ratchford. (The record does not reveal whether this petition was to have been filed in an action brought by Ratchford or in an action brought by Maute, with which Ratchford was assisting.) Defendant Jeffes, however, returned the unopened envelope to the superintendent of Graterford, inasmuch as no prior approval for the interprison correspondence had been obtained. The envelope was returned unopened to Ratchford through the Paraprofessional *677 Law Clinic at Graterford, bearing the stamp:
"REFUSED
Prior approval needed to correspond between institutions."
On May 15, 1977, Ratchford filed the complaint in this action, alleging that Jeffes' actions had violated his rights under the first, fifth, eighth, and fourteenth amendments to the Constitution, and seeking both damages and equitable relief under the Civil Rights Act of 1871, 42 U.S.C. § 1983 (1970). In particular, Ratchford contended that the return of his legal mail constituted an impermissible infringement of his freedom of speech, a denial of due process and equal protection, and cruel and unusual punishment.
That same day, Ratchford sent a letter to Maute, requesting that Maute execute an affidavit describing an earlier lock-up that had occurred while Ratchford was confined at a third Pennsylvania prison. The lock-up, which Maute evidently witnessed, formed the basis of Ratchford's civil rights action against the superintendent of that institution. (That action, United States ex rel. Ratchford v. Mazurkiewicz, No. 77-1796, 451 F.Supp. 671, was also filed in this court on May 15, 1977.) Ratchford's envelope addressed to Maute was opened and returned by defendant Jeffes, due to the lack of prior approval for inter-prison correspondence. In returning Ratchford's letter and envelope to the superintendent of Graterford, Jeffes also enclosed a memorandum expressing his concern over what he viewed as Ratchford's violations of the procedures governing the Paraprofessional Law Clinic at Graterford.
On May 20, 1977, Jeffes received a letter dated May 15 from Ratchford. The letter stated that Ratchford intended to file this action to redress Jeffes' improper return of legal mail addressed to Maute. The letter also stated that any further interference with legal mail sent by Ratchford to prisoners confined at Dallas would "result in additional litigation."
On June 29, 1977, Ratchford filed a motion for an order requiring Jeffes to show cause why Ratchford should not be permitted to send an affidavit to Maute, a witness in Civil Action No. 77-1796, in order to obtain Maute's signature. Rather than issue a formal order, I wrote to Jeffes and requested that Ratchford be permitted to mail the affidavit to Maute. Jeffes promptly wrote to Ratchford, granting the request for permission to mail the affidavit to Maute. Jeffes' letter instructed Ratchford to mark the envelope containing the affidavit "Legal MailAffidavit," and it informed Ratchford that the mailroom at Dallas would receive a copy of Jeffes' letter to insure that the matter was handled properly. Although Ratchford later filed in this action an affidavit executed by Maute on December 19, 1977, dealing with defendant Jeffes' return of Ratchford's legal mail, Maute apparently never executed an affidavit regarding Ratchford's lock-up, the affidavit that Ratchford had sought to use in Civil Action No. 77-1796.
On September 14, 1977, Jeffes filed this motion for summary judgment. In support of his motion, Jeffes filed an affidavit that states in part:
"Had Mr. Ratchford written to me and requested permission to correspond with Mr. Maute as a result of joint legal issues, permission in all probability would have been granted for a reasonable period of time.
In the past where we have had prior requests from the Court as well as requests from co-defendants and/or witnesses in civil or criminal actions which could be validated, permission to correspond [between institutions] has been granted."
Jeffes Affidavit at 3.
On September 15, 1977, Ratchford filed both a memorandum in opposition to Jeffes' motion and the motion for leave to file a supplemental complaint, together with a copy of the proposed complaint. This complaint, which is based on section 1985 as well as on section 1983, alleges that Jeffes and seven other defendants conspired to take various measures against Ratchford in retaliation for Ratchford's institution of *678 this lawsuit. For example, it alleges that Jeffes lodged a misconduct report with the superintendent at Graterford in retaliation for Ratchford's activities in connection with this case. It further alleges that Jeffes, using his influence as a prison superintendent, has sought to close the Paraprofessional Law Clinic that operates within Graterford, and has succeeded in having Ratchford suspended from the clinic. See Wade v. Kane, 448 F.Supp. 678 (E.D.Pa.1978) (issuance of preliminary injunction ordering the reopening of the Paraprofessional Law Clinic at Graterford). The complaint also alleges that incoming mail from Ratchford's attorney has repeatedly been opened, censored, and delayed by defendant Batdorf, the mailroom supervisor at Graterford. Of the seven defendants other than Jeffes who are named in the proposed complaint, four are Graterford officials and three are Graterford prisoners who are connected with the Paraprofessional Law Clinic. In the proposed complaint, Ratchford seeks both compensatory and punitive damages, as well as injunctive and declaratory relief.
Jeffes subsequently filed a memorandum in opposition to Ratchford's motion, together with five affidavits pertaining to this controversy: a second affidavit executed by Jeffes, and affidavits executed by defendants Sims, Wolfe, Batdorf, and Mokychic, the four Graterford officials named in Ratchford's supplemental complaint. Finally, Ratchford has since filed several affidavits of his own, as well as affidavits executed by two Graterford inmates, Doll and Cox, and an affidavit executed by Maute, who is confined at the Dallas institution.

RATCHFORD'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT
Although Ratchford's proposed complaint is somewhat vague with respect to when the alleged retaliatory measures occurred, I construe it as a supplemental complaint rather than an amended complaint. See generally Fed.R.Civ.P. 15(a), (d). Ratchford's motion must therefore be determined by reference to Rule 15(d) of the Federal Rules of Civil Procedure, which provides:
"Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor."
Defendant Jeffes urges that Ratchford not be granted leave to file this supplemental complaint. Although he does not contend that he would be prejudiced in any way were Ratchford permitted to supplement the original complaint, Jeffes urges that the supplemental complaint, like the original complaint, is "frivolous and insubstantial." Defendant's Memorandum of Law (Document No. 10) at 4. See also Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820 at 823 (3d Cir. 1978) ("prejudice to the non-moving party is the touchstone" for denying leave to file an amended complaint). In essence, Jeffes reiterates the arguments contained in his motion for summary judgment, expands on those arguments in order to meet the new allegations contained in the supplemental complaint, and, on this basis, opposes Ratchford's motion.
If I were completely persuaded by Jeffes' arguments pertaining to summary judgment, then, putting to one side the seven "new" defendants, it would be futile to allow Ratchford to file a supplemental complaint. Cf. 3 Moore's Federal Practice ¶ 15.08[4] at 904 (2d ed. 1948) (futility of granting leave to amend where the amended complaint would be subject to dismissal under Rule 12(b)(6)). However, after considering Jeffes' arguments regarding the claims set out in the supplemental complaint, I cannot say that he would be entitled to summary judgment on all of them. *679 Thus, granting Ratchford leave to file the supplemental complaint would not be a futile act. I see no other basis for Jeffes' opposition on this point, and Ratchford will therefore be granted leave to file the supplemental complaint. Defendant Jeffes shall plead thereto within thirty days after service.

JEFFES' MOTION FOR SUMMARY JUDGMENT

A. Claims Contained in the Original Complaint

Ratchford's original complaint, based on section 1983, dealt solely with Jeffes' actions in returning two pieces of legal mail sent by Ratchford to Maute. The central issue with respect to the original complaint, therefore, is the validity of the requirement of prior approval for inter-prison correspondence. The requirement is set out in a regulation adopted by the Pennsylvania Bureau of Correction, which provides in pertinent part:
"Correspondence with inmates of other institutions . . . will not be permitted except upon special approval of the Superintendent."
7 Pa.Bull. 2648, 2649 (Sept. 17, 1977), amending 37 Pa.Code § 93.23.
Ratchford argues that this requirement, as applied to legal correspondence between an inmate acting as his own attorney and an inmate (at another institution) whose participation is needed in preparing a case, violates one or more of his constitutional rights. Jeffes, on the other hand, contends that he is entitled to summary judgment on these claims because (1) this action is now moot, (2) the challenged regulation was upheld only recently in Mayberry v. Robinson, 427 F.Supp. 297 (M.D.Pa.1977), (3) in any event, the requirement is a necessary security measure, and (4) Jeffes enjoys qualified, "good-faith" immunity from damages under section 1983. I will consider these contentions separately.
With respect to Ratchford's request for declaratory and injunctive relief, Jeffes is clearly correct, given the present state of the record, that this action is moot. As I noted earlier, Ratchford was expressly authorized to mail an affidavit to Maute at the Dallas prison, and I gather that he did so, for the record contains an affidavit, executed by Maute, concerning the facts alleged in the supplemental complaint. In order for a live "case" or "controversy" to exist, it must appear that a judgment on the validity of the challenged regulation would affect the adverse legal interests of the parties. See generally Geraghty v. United States Parole Comm'n, 579 F.2d 238 at 245-247 (3d Cir. Mar. 9, 1978) (exploring the relationship between the mootness doctrine and the jurisdictional bounds established by article III of the Constitution). As the record now stands, I cannot say with any degree of assurance that the future enforcement of this regulation will impair any interest of Ratchford's, and the legal interests that other inmates might have cannot be taken into consideration, for this is not a class action. Accordingly, I conclude that the requests for prospective injunctive and declaratory relief are moot.[2]
With respect to Ratchford's claim for damages, however, this action is not moot. See, e. g., Memphis Light, Gas & Water Div. v. Craft, 436 U.S. ___, ___, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). If Ratchford can establish that his civil rights were violated by Jeffes' actions in applying the challenged regulation, an award of damages might well follow.[3]
*680 Jeffes urges, however, that he enjoys qualified, "good-faith" immunity from damages liability under section 1983 by reason of his position as a prison superintendent. In light of Procunier v. Navarette, 434 U.S. ___, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978), this is undoubtedly correct. However, "[t]he fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence at trial." Imbler v. Pachtman, 424 U.S. 409, 419 n. 13, 96 S.Ct. 984, 989, 47 L.Ed.2d 128 (1976); see Raitport v. Provident Nat'l Bank, No. 76-3572, slip op. at 9 n. 3, 451 F.Supp. 522 at 529 (E.D.Pa. April 12, 1978). But see Procunier v. Navarette, supra (reinstating district court order granting summary judgment for defendant prison officials on the basis of qualified immunity). Accordingly, I cannot say at this time that Jeffes "is entitled to a judgment as a matter of law," Fed.R. Civ.P. 56(c), and I must therefore consider Jeffes' arguments based on the merits of Ratchford's claims.

Cruel and Unusual Punishment
I had occasion only recently to discuss the development of the eighth amendment's prohibition on cruel and unusual punishment and the proper application of that prohibition to conditions found in state prisons. See United States ex rel. Hoss v. Cuyler, 452 F.Supp. 256 at ___-___ (E.D.Pa. May 1, 1978). I need not retrace those steps at any length here, for it is readily apparent that defendant Jeffes' conduct with respect to Ratchford did not constitute cruel and unusual punishment. Indeed, it may be thought that Jeffes' conduct did not constitute "punishment" at all. However, the eighth amendment's prohibition of cruel and unusual punishment "applies to any acts committed while a person is undergoing punishment for a crime, even though those specific acts may not be committed for punitive purposes." United States ex rel. Hoss v. Cuyler, supra, slip op. at 43 n. 12, 454 F.Supp. at ___ (citations omitted). I therefore must consider whether Jeffes' actions transgressed that prohibition.
Taking the facts as stated earlier, however, it is clear that Jeffes' actions involved neither the wanton infliction of physical pain nor the imposition of a punishment incompatible with evolving societal standards of decency. See generally Estelle v. Gamble, 429 U.S. 97, 102-03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Nor can it be said that Jeffes' conduct rendered the conditions of Ratchford's incarceration so severe as to be grossly disproportionate to the crime for which he was incarcerated. Finally, the remaining aspect of the eighth amendment prohibitionthe "substantive limits on what can be made criminal and punished" is not involved here, for Ratchford does not contend that he was incarcerated for conduct that could not be made criminal consistently with the eighth amendment. Estelle v. Gamble, supra, 429 U.S. at 103 n. 7, 97 S.Ct. [285] at 290.
Under the circumstances, I have no hesitation in concluding that Jeffes is entitled to judgment as a matter of law insofar as Ratchford's claims against him are based on any alleged violation of the prohibition on cruel and unusual punishment. Accordingly, I will enter partial summary judgment for Jeffes.

Equal Protection of the Laws
I pass over this claim quickly, for the record contains no evidence, and, indeed, the complaint contains no allegations, that would support Ratchford's contention that Jeffes' conduct amounted to a denial of equal protection. Accordingly, I will enter partial summary judgment for Jeffes insofar as Ratchford's section 1983 claim against him rests on any alleged violation of the equal protection clause.

Due Process of Law
With respect to Ratchford's claim based on the due process clause, I note here that *681 Ratchford asserts neither a denial of procedural due process nor a denial of substantive due process, as the latter term is generally understood. See, e. g., Moore v. City of East Cleveland, 431 U.S. 494, 502-03, 97 S.Ct. 1932, 52 L.Ed.2d 531 (plurality opinion), 542-50 (White, J., dissenting) (1977). Rather, Ratchford relies on the due process clause of the fourteenth amendment only insofar as it (1) provides the foundation for the constitutional right of access to the courts enjoyed by state prisoners, Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), and (2) imposes on the Commonwealth of Pennsylvania the limitations set out in the first amendment.
The heart of this case, then, is Ratchford's argument that the Bureau of Correction regulation, as applied to inter-prison correspondence dealing with legal matters, violates (1) his constitutional right of access to the courts, and (2) his first amendment right of free speech. Jeffes contends that these issues may properly be resolved by an entry of summary judgment in his favor, a conclusion that I cannot accept.
First, Jeffes urges that the regulation at issue here was upheld in Mayberry v. Robinson, 427 F.Supp. 297 (M.D.Pa.1977). I read that case somewhat differently. There, defendant Jeffes had issued an order preventing Mayberry, a prisoner confined at the Dallas institution, from corresponding with his sister, who was not confined, until she responded to allegations that she had been serving as a conduit for Mayberry's correspondence with an inmate in another Pennsylvania state prison. Mayberry argued that Jeffes' order restricting correspondence with Mayberry's sister violated his first amendment rights. Judge Muir upheld Jeffes' order, noting that "[t]he prohibition of communication between prisoners by means of a third party" furthered a substantial governmental interest, and thus satisfied the requirements of Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). 427 F.Supp. at 307. The validity of the regulation itself was nowhere discussed. Moreover, Mayberry v. Robinson differs sharply from this case in that Mayberry was not seeking to correspond with another prisoner for the purpose of preparing a lawsuit, and so the constitutional right of access to the courts was simply not considered in that case.[4]
Jeffes' second, and related, argument is that the challenged regulation is a necessary security measure. Jeffes Affidavit, Exhibit D to Document No. 10, ¶ 7. I do not doubt that the regulation makes some incremental contribution to prison security. That alone, however, does not meet Jeffes' burden of showing that he is entitled to judgment as a matter of law.
To begin with, the analytical framework for resolving prisoners' claims that implicate the right of access to the courts is still somewhat unclear. See Wade v. Kane, 448 F.Supp. 678, 684 (E.D.Pa.1978) (Lord, Ch. J.). The leading Supreme Court decisions articulating the right of access have given short shrift to proffered "justifications" for regulations that infringe on that right. Thus, in Bounds v. Smith, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Court emphasized that the cost of providing prisoners with adequate law libraries could not justify the failure to provide such facilities as are "needed to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." 430 U.S. at 825, 97 S.Ct. at 1496. Similarly, in Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969), the Court struck down a Tennessee prison regulation that barred inmates from assisting one another in preparing habeas corpus petitions. Justice Fortas' opinion for the Court contained the following observation:

*682 "Tennessee urges, however, that the contested regulation in this case is justified as a part of the State's disciplinary administration of the prisons. There is no doubt that discipline and administration of state detention facilities are state functions. They are subject to federal authority only where paramount federal constitutional or statutory rights supervene. It is clear, however, that in instances where state regulations applicable to inmates of prison facilities conflict with such rights, the regulations may be invalidated."
393 U.S. at 486, 89 S.Ct. at 749.
Thus, if the regulation at issue here does impose a significant burden on prisoners' access to the courts, Jeffes' assertion that prison security requires this infringement would not necessarily be dispositive of Ratchford's claim. See also Wolff v. McDonnell, 418 U.S. 539, 576, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (suggesting in dictum that only a "substantial" burden on the right of access would warrant remedial measures). At the very least, the possibility that some less restrictive regulation might adequately serve the interest in security would have to be considered. See Procunier v. Martinez, 416 U.S. 396, 420, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). As the record now stands, however, it contains no information bearing on this issue.
Moreover, Ratchford's contention based on access to the courts cannot be assessed simply by examining the text of the challenged regulation. Rather, a searching inquiry into the application and practical effect of that regulation is needed before any meaningful conclusions can be drawn concerning its impact on the constitutional right involved here. See Bryan v. Werner, 516 F.2d 233, 236 (3d Cir. 1975) (remanding civil rights action for district court determination whether prison law clinic regulations "operate in fact in such a way as to impede access to the courts by prisoners") (emphasis in original). For example, it may be that the requirement of prior approval for inter-prison correspondence discourages some inmates who are preparing their own cases from seeking needed information from inmates confined at other institutions, and thus "effectively chills access to the courts." Carty v. Fenton, 440 F.Supp. 1161, 1163 (M.D.Pa.1977); cf. Wolff v. McDonnell, 418 U.S. 539, 577-80, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (invalidating prison regulation that prevented inmates from assisting one another in preparing habeas corpus petitions and civil rights actions). The present state of the factual record simply does not permit an informed determination as to the effect of this regulation on the right of access to the courts. Under the circumstances, I cannot say that Jeffes is entitled to judgment as a matter of law.
The same conclusion obtains with respect to Ratchford's related claim, based on the first amendment. In assessing the validity of a prison regulation that restricts prisoner correspondence, careful consideration should be given to the possibility that a less restrictive regulation might suffice to promote the particular governmental interest that underlies the regulation. Cf. Procunier v. Martinez, 416 U.S. 396, 413, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) (invalidating prison mail regulations as needlessly sweeping infringements on the first amendment rights of unconfined persons desiring to correspond with prisoners); Wolfish v. Levi, 573 F.2d 118, 129 (2d Cir. 1978) (affirming district court order invalidating prison mail regulation and noting that other prisons were able to adequately protect their interest in security with "far less restrictive rules"). However, as the record in this case now stands, I cannot determine whether some less restrictive regulation might adequately serve the legitimate interest in prison security. See also Gray v. Creamer, 465 F.2d 179, 186 (3d Cir. 1972) ("It is abundantly clear that the state prison authorities do not possess unfettered discretion to censor or restrict an inmate's mail in the name of preserving order, safety and discipline."). Under the circumstances, the entry of summary judgment would be inappropriate.
*683 In summary, then, I agree with defendant Jeffes that the request for injunctive and declaratory relief contained in Ratchford's original complaint is now moot. The request for damages under section 1983 is still "live," however, subject to Jeffes' showing at trial that he is entitled to qualified, "good-faith" immunity. With respect to the claims based on the eighth amendment and the equal protection clause, Jeffes is entitled to summary judgment. With respect to the claims based on the due process right of access to the courts and the first amendment, however, summary judgment cannot be entered at this time.

B. Claims Contained in the Supplemental Complaint

Ratchford's supplemental complaint seeks to impose liability on Jeffes for a variety of acts allegedly occurring after the initial refusals to deliver Ratchford's legal mail to Maute. The complaint, which is based on sections 1983 and 1985, charges that Jeffes' conduct amounted to cruel and unusual punishment, worked a denial of due process and equal protection, and infringed impermissibly on Ratchford's right of access to the courts and on his first amendment right of free speech. Although Jeffes' motion for summary judgment was filed before Ratchford filed the supplemental complaint, Jeffes' memorandum of law concerning the supplemental complaint makes it clear that he also seeks summary judgment on the additional claims set out in the supplemental complaint.
I noted earlier, in response to Jeffes' contention that the supplemental complaint was frivolous, that I did not believe that Jeffes would be entitled to summary judgment on all the claims set out therein. Having said that, I will not at this time examine each claim in light of Jeffes' motion for summary judgment. Rather, if Jeffes renews his motion after Ratchford has formally filed the supplemental complaint, I will then consider which of the claims contained in the supplemental complaint may properly be disposed of on a motion for summary judgment.

CONCLUSION
For the reasons stated in this opinion, Ratchford's motion for leave to file a supplemental complaint will be granted. Defendant Jeffes will be required to plead thereto within thirty days after service. In addition, Jeffes is entitled to partial summary judgment as follows. Judgment will be entered for Jeffes on the section 1983 claim set out in the original complaint, insofar as that claim rests on any alleged violation of either the eighth amendment or the equal protection clause. In all other respects, Jeffes' motion for summary judgment will be denied.
NOTES
[1] See, e. g., Bishop v. Wood, 426 U.S. 341, 347 n. 11, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam); Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
[2] Ratchford's argument to the contrary is based primarily on Washington v. Lee, 263 F.Supp. 327 (M.D.Ala.1966) (three-judge court), aff'd per curiam, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). Washington, unlike the present case, was a class action, and the portion of the district court opinion that Ratchford relies on dealt only with the standing of a class representative to assert certain claims pertaining to racial segregation in state and local prisons and jails.
[3] Jeffes has not raised the eleventh amendment as a bar to an award of damages in this case. In any event, I note that Jeffes is sued here in his individual capacity as well as in his official capacity, so that the eleventh amendment is not a complete bar to an award of damages here. See generally Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
[4] Heft v. Carlson, 489 F.2d 268 (5th Cir. 1973) (per curiam), also relied upon by Jeffes, upheld prison guidelines that restricted inter-prison correspondence. The court in Heft expressly noted, however:

"We are not, of course, dealing with communications with courts and attorneys as to which much greater freedom must be assured. [citations omitted]"
489 F.2d at 269.
Heft thus has little bearing on the issue raised in this case.