334 F.3d 301
 THE PARA-PROFESSIONAL LAW CLINIC AT SCI-GRATERFORD; H. Williams, AF-2935; Walter Dobson, AF-4135; D. Greene, AF-5712; M. Twiggs, AF-6967; C. Diggs, AK-7945; R. Williams, AM-1008; C. Boyd, AM-9051; C. Johnson, AP-2785; W. Finnigan, AS-0826; A. Phillips, AS-1767; K. Mines, AY-5941; J. Pace, AY-6445; R. Walker, AY-8060; R. Ortiz, BL-0305; C. Bassett, BV-2576; J. Anderson, BW-7671; T. Henderson, CP-0814; W. Durham, DB-6750; T. Mott, DE-1624; J. Figueroa, DZ-5832; Zebbie Clifton, AF-5043; Bebley Wells, AM-0253
v.
Jeffrey A. BEARD, Secretary of Corrections of the Commonwealth of Pennsylvania; Donald T. Vaughn, Superintendent of the State Correctional Institution at Graterford (Sci-Graterford); Manuel A. Arroyo, Deputy Superintendent for Centralized Services at Sci-Graterford
The Para-Professional Law Clinic at Sci-Graterford; H. Williams, AF-2935; Walter Dobson, AF-4135; D. Greene, AF-5712; M. Twiggs, AF-6967; C. Diggs, AK-7945; R. Williams, AM-1008; C. Boyd, AM-9051; C. Johnson, AP-2785; W. Finnigan, AS-0826; A. Phillips, AS-1767; K. Mines, AY-5941; J. Pace, AY-6445; R. Walker, AY-8060; R. Ortiz, BL-0305; C. Bassett, BV-2576; J. Anderson, BW-7671; T. Henderson, CP-0814; W. Durham, DB-6750; T. Mott, DE-1624; J. Figueroa, DZ-5832; Appellants.
 No. 02-2788.
 United States Court of Appeals, Third Circuit.
 Argued April 8, 2003.
 July 1, 2003.
 
 Angus R. Love, (Argued), Pennsylvania Institutional Law Project, Philadelphia, for Appellants.
 John O.J. Shellenberger, III, (Argued), Office of Attorney General of Pennsylvania, Philadelphia, for Appellees.
 Before BECKER,* BARRY and BRIGHT,** Circuit Judges.
 OPINION OF THE COURT
 BARRY, Circuit Judge.
 
 
 1
 At issue in this appeal is whether a permanent injunction, currently in effect and requiring that the Para-Professional Law Clinic ("Clinic") at the State Correctional Institute at Graterford, Pennsylvania ("Graterford") remain open, is necessary to correct "current and ongoing" violations of the inmates' constitutional right of access to the courts. The plaintiffs — the Clinic and 22 inmates all but one of whom are members of the Clinic — concede that the rights of inmates at Graterford are not currently being violated. They argue, instead, that those rights will be violated if the injunction is lifted, because they predict that the defendant state officials will then proceed to abolish the Clinic. A prediction, however, is not enough to forestall the termination of the injunction because the defendants' future plans, if plans they be, do not constitute a current and ongoing violation of the inmates' rights as required by the Prison Litigation Reform Act of 1995 ("PLRA"). Moreover, even if the defendants do abolish the Clinic, the inmates' constitutional right to access the courts will not necessarily be violated. We, therefore, will affirm the order of the District Court granting defendants' motion to terminate the injunction.
 
 I.
 
 2
 The Para-Professional Law Clinic at the State Correctional Institute at Graterford was founded by a group of inmates in 1971 to provide other inmates, primarily those who were illiterate, with legal assistance. It was incorporated in 1976 as a non-profit corporation under Pennsylvania law for the purpose of providing legal services to Graterford inmates.
 
 
 3
 The Clinic is governed by a board of directors composed largely of inmate officers elected by the Clinic's inmate members. The twenty-one inmates who currently work for the Clinic assist other inmates with legal matters including post-conviction relief and habeas petitions, parole matters and civil rights actions. They are compensated for this work as they would be for any other Department of Corrections work assignment.
 
 
 4
 In December of 1977, state officials decided to close the Clinic, effective February 15, 1978. In the interim, the Clinic was to accept no new cases and its work was to be phased out. The then-plaintiffs, inmates at Graterford, went to federal court to challenge the closing and, on February 17, 1978, Chief Judge Joseph S. Lord, III issued a preliminary injunction ordering that the Clinic be reopened. Wade v. Kane, 448 F.Supp. 678, 685 (D.C.Pa.1978). On July 31, 1986, in a case consolidated with Wade, Judge Lord held an evidentiary hearing and, on March 25, 1987, permanently enjoined the closing of the Clinic or any of its facilities or offices. United States of America ex rel. Para-Professional Law Clinic v. Kane, 656 F.Supp. 1099, 1108 (E.D.Pa.1987). Judge Lord based the injunction on his conclusion that the Clinic was integral to inmates' access to the courts, in particular inmates who were functionally illiterate or housed in administrative or disciplinary custody.
 
 
 5
 Just over nine years later, on April 26, 1996, the Prison Litigation Reform Act of 1995 was signed into law as Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996. Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996). Congress enacted the PLRA in an apparent effort (1) to discourage prisoners from filing frivolous lawsuits which strain the judiciary's scarce resources and (2) to end the federal courts' perceived micro-management of our nation's prisons. Imprisoned Citizens Union v. Ridge, 169 F.3d 178, 189 (3d Cir.1999). The provision of the PLRA at issue in this case, and we turn to that shortly, reduces the federal courts' oversight role by limiting the courts' authority to award prospective relief in cases challenging conditions at prison facilities, as well as the courts' continued ability to enforce previously entered consent decrees and injunctions in such cases. Miller v. French, 530 U.S. 327, 347, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000); Cason v. Seckinger, 231 F.3d 777, 780 (11th Cir.2000). According to the relevant House Conference Report, the purpose of the provision is to ensure that "prison condition remedies do not go beyond the measures necessary to remedy federal rights violations and that public safety and criminal justice needs are given appropriate weight in framing such remedies." H.R. Conf. Rep. No. 104-378, at 166 (1995).
 
 
 6
 On February 14, 2001, the defendants moved to terminate Judge Lord's 1987 injunction pursuant to Section 802 of the PLRA, codified at 18 U.S.C. § 3626, which provides in relevant part that "[i]n any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervenor ... in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment." 18 U.S.C. § 3626(b)(1)(A)(iii).
 
 
 7
 Plaintiffs opposed the motion, arguing that the following exception applied: "Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). Plaintiffs did not claim that there was a current and ongoing violation of their right of access to the courts; indeed, they conceded there was not because, in their view, the Clinic prevented such a violation from occurring. They argued that Section 3626(b)(3) nevertheless applied, because if the injunction were lifted, defendants would close the Clinic and would fail to replace it with an adequate substitute.[1]
 
 
 8
 District Court Judge Berle M. Schiller held an evidentiary hearing on the motion to terminate the injunction and, in a Memorandum and Order dated May 29, 2002, rejected plaintiffs' argument that the contemplated closure of the Clinic established that there was a "widespread, current, and ongoing" violation of inmates' right of access to the courts at Graterford as would be required to continue the injunction. This appeal followed.
 
 II.
 
 9
 In order to prevail before us, plaintiffs would have to show that the words "current and ongoing" in Section 3626(b)(3) encompass a situation such as theirs, in which there is no current violation, but in which defendants have acknowledged that they intend to make changes which would be barred by the injunction put into place to prevent such a violation.
 
 
 10
 We conclude that the plain meaning of the words "current and ongoing" used in the PLRA does not encompass future violations. This interpretation is supported by the statute's history. As originally enacted in 1996, Section 3626(b)(3) provided that courts could avoid termination if the record showed a current or ongoing violation. In 1997, the section was amended to require a current and ongoing violation. The House of Representatives Conference Report explains the reason for the change as follows:
 
 
 11
 The provision also includes a change in subsection (b)(3) that corrects the confusing use of the word "or" to describe the limited circumstances when a court may continue prospective relief in prison conditions litigation to make clear that a constitutional violation must be "current and ongoing." These dual requirements are necessary to ensure that court orders do not remain in place on the basis of a claim that a current condition that does not violate prisoners' Federal rights nevertheless requires a court decree to address it, because the condition is somehow traceable to a prior policy that did violate Federal rights, or that government officials are "poised" to resume a prior violation of federal rights. If an unlawful practice resumes or if a prisoner is in imminent danger of a constitutional violation, the prisoner has prompt and complete remedies through a new action filed in State or Federal court and preliminary injunctive relief.
 
 
 12
 H.R. Conf. Rep. No. 105-405, at 133 (1997). According to the Conference Report, then, the fact that Graterford may be poised to eliminate the Clinic and, thus, at least potentially to again violate federal rights, does not make the injunction necessary to correct a current and ongoing violation. This comports with what the First Circuit has characterized as Congress' "ambient intent" in enacting the PLRA, namely, "to truncate the federal judiciary's involvement in prison administration." Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 655 (1st Cir.1997).
 
 
 13
 Other Courts of Appeals which have addressed this question have similarly concluded that Section 3623(b)(3) does not apply unless the defendants are currently violating the plaintiffs' rights. See Castillo v. Cameron County, Tex., 238 F.3d 339, 353 (5th Cir.2001); Cason, 231 F.3d at 784; Inmates of Suffolk County Jail, 129 F.3d at 662.
 
 
 14
 Plaintiffs' arguments fail for a second reason, a reason related to the particular constitutional right involved, namely the right of access to the courts. Even if defendants were eventually to close the Clinic, the inmates' constitutional rights will not be violated merely because of the closure. Inmates do not have a constitutional right to the Clinic per se. Lewis v. Casey, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (prisoners have a right of access to the courts, not to a law library or to legal assistance). Should defendants replace the Clinic with an alternative program, that program "would remain in place at least until some inmate could demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." Id. at 353, 116 S.Ct. 2174.
 
 
 15
 All this having been said, and without minimizing defendants' expressed concerns about the potential security problems posed by certain aspects of the Clinic's current operation, we encourage defendants in the strongest possible terms to reconsider any plan they may have to close the Clinic.[2] The District Court summarized the situation at Graterford as follows:
 
 
 16
 The record shows that Graterford's two law libraries are chronically under-staffed and intermittently subject to closure. Despite the marked increase in inmate population, especially Hispanic inmates, since entry of the preliminary injunction in 1978, there is no official mechanism of language translation currently in use at Graterford. The inmates in the Mental Health and Special needs Units receive virtually no legal assistance through Graterford, other than from the [Clinic]. It is unlikely that such inmates could submit written requests for photocopies of specific documents from the law library without assistance, and it is equally unlikely that the "staff paralegal" would be able to help them do so. Even if the current occupant of that position were qualified for the job, she would have trouble finding the time, since she is assigned to two positions at Graterford and works at seven different institutions in addition to her positions at Graterford.
 
 
 17
 U.S. ex rel. Paraprofessional Law Clinic v. Beard, No. 78-538, 2002 WL 1160757, at *6 (E.D.Pa. May 30, 2002). The District Court concluded that the Clinic is an integral part of the system of access at Graterford, that both inmates and staff rely on it heavily for legal assistance, including for research and document production, and that the services provided by the Clinic "supplement the otherwise inadequate and unreliable services provided by Graterford itself." Id. In light of these findings, we urge the defendants to pay close attention to the District Court's prediction that, if the defendants were to close the Clinic, they would need to completely overhaul the system of legal assistance at Graterford to ensure that inmates have the requisite access to the courts. The Clinic provides a valuable service both to the inmates whom it assists and to the courts before whom the inmates' cases come, including this Court. Indeed, it points with pride to a list of 130 "Favorable Results," a list that we are told "is not exhaustive of the [Clinic's] victories or areas in which we provide legal help." If the Clinic is closed and that closure serves to adversely affect the prisoners' constitutional right of access to the courts, this would likely cause more litigation and the intervention, yet again, of the federal courts. We encourage the defendants to bear this in mind as they weigh their options going forward.
 
 
 18
 The District Court's order of May 29, 2002 will be affirmed.
 
 
 
 Notes:
 
 
 *
 Judge Becker completed his term as Chief Judge on May 4, 2003
 
 
 **
 The Honorable Myron H. Bright, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation
 
 
 [1]
 The only evidence of the defendants' plans appears to be the deposition testimony of Jeffrey A. Beard, Pennsylvania's Secretary of Corrections. Mr. Beard testified that he intended to close the clinic "[a]t some point in time," but that the closure would not be "precipitous." He explained that defendants planned to "take a look at what services they're providing, who they're providing the services, what's going on and figure a way to phase them out, so to speak, and to move the service over to the law library and to do it in a planned and in a structured fashion."
 
 
 [2]
 The security concerns arise out of the relatively minimal staff supervision of Clinic activities, the fact that the Clinic involves inmates supervising other inmates, and the unsupervised mobility of Clinic members