

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-1999

# Imprisoned Citizens v. Ridge

Precedential or Non-Precedential:

Docket 98-1536

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Imprisoned Citizens v. Ridge" (1999). *1999 Decisions.* Paper 50.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/50

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed February 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-1536

IMPRISONED CITIZENS UNION; HERBERT LANGES;
MILTON TAYLOR; JACK LOPINSON; MACKEY R. CHOICE;
RICHARD O.J. MAYBERRY; FRANK PATTERSON; DANIEL
DELKER; HAROLD A.X. BROOKS; CARLINE COEFIELD;
THELMA SIMON; AUDREY MASON; SHARON WIGGINS;
DOMINIC CODISPOTI; PHILIP HOUSEHOLDER; JAMES
HARBOLD; JOSEPH OLIVER; PAUL LYONS; ROBERT
BROWN; JAMES SZULCZEWSKI; GERALD MAYO;
WESLEY HARRIS,

v.

TOM RIDGE, GOVERNOR OF THE COMMONWEALTH OF
PENNSYLVANIA; J. SHANE CREAMER, ATTORNEY
GENERAL, STATE CAPITOL HARRISBURG,
PENNSYLVANIA; MARTIN F. HORN, COMMISSIONER OF
THE DEPARTMENT OF CORRECTIONS; DONALD
VAUGHN, SUPERINTENDENT OF SCI-GRATERFORD;
DAVID LARKINS, SUPERINTENDENT OF SCI-DALLAS;
MARY LEFTRIDGE-BYRD, SUPERINTENDENT OF SCI-
MUNCY; FREDERICK FRANK, SUPERINTENDENT OF SCI-
HUNTINGDON; ROBERT MYERS, ACTING
SUPERINTENDENT OF SCI-ROCKVIEW; AND JAMES
PRICE, SUPERINTENDENT OF SCI-PITTSBURGH,

UNITED STATES OF AMERICA, Intervenor in District
Court

(D.C. No. 70-cv-03054)

ROBERT RAY; GEORGE SPEARS; MURRY DICTERSON;
CLARENCE REYNOLDS; GEORGE RIVERS; ALBERT
JOHNSON; JAMES GOLDSBOROUGH; JOSEPH LIGON;
RICHARD BELLAMY; EMANUEL JOHNSON; GENE
FULLER; JAMES C. WILSON; CARLOS RODRIGUEZ;

WILLIE BROOKER; FRANK HALL

v.

DONALD VAUGHN, SUPERINTENDENT, State Correctional
Institution at Graterford

UNITED STATES OF AMERICA, Intervenor in D.C.

(D.C. No. 71-cv-00513)

KENNETH W. OWENS, JR.; GUY J. BICKING; JAMES
ALAN ROMBERGER; KENNETH W. TEATER,

v.

CUSTODIAL EMPLOYEES AND "PRIVATE CITIZENS",
LISTED BELOW; JOHN DOE MURDOCK, Box 244
Graterford, PA; JOHN DOE BELLOFF, Box 244 Graterford,
PA; ERSKIND DEHAMUS, Box 244 Graterford, PA

UNITED STATES OF AMERICA, Intervenor in D.C.

(D.C. No. 71-cv-01006)

WILLIAM BRACEY, (G-8571), an inmate; JAMES PICKETT,
(H-2720), an inmate; CLARENCE SAMUELS, (E-4517), an
inmate on their own behalf and on behalf of others
similarly situated

v.

ARTHUR T. PRASSE, Commissioner, Bureau of
Corrections of the Commonwealth of Pennsylvania;
DONALD VAUGHN, Superintendent State Correctional
Institution at Graterford; CLARENCE R. WOLFE, Deputy
Superintendent State Correctional Institution at
Graterford; CHARLES S. FRISBEE, School Director State
Correctional Institution at Graterford

UNITED STATES OF AMERICA, Intervenor in D.C.

(D.C. No. 70-cv-02545)

Imprisoned Citizens Union, Jack Lopinson, Daniel Delker,
Gerald Mayo and Sharon Wiggins, on their behalf and on
behalf of the class of all plaintiffs,

Appellants

ON APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil Nos. 70-3054, 71-513, 71-1006, 70-2545)

District Judge: The Honorable Jan E. DuBois

Argued: September 17, 1998

Before: SLOVITER, SCIRICA, and ALITO, Circuit Judges

(Opinion Filed: February 25, 1999)

        Stefan Presser (argued)
        American Civil Liberties
         Union of Pennsylvania
        125 South Ninth Street, Suite 701
        Philadelphia, PA 19107

         Attorney for Plaintiffs/Appellants

        D. Michael Fisher
         Attorney General
        John G. Knorr, III
         Chief Deputy Attorney General
        Paul A. Tufano
         General Counsel
        Sarah B. Vandenbraak (argued)
         Chief Counsel, Pennsylvania
        Department of Corrections
        2520 Lisburn Road
        P.O. Box 598
        Camp Hill PA 17001-0598

         Attorneys for Defendants/Appellees

        Michael R. Stiles
         United States Attorney
        Barbara L. Herwig
        Robert M. Loeb (argued)
        United States Department of Justice
        Patrick Henry Building
        601 D Street, N.W.
        Washington, D.C. 20530

         Attorneys for Intervenor/Appellee
        United States of America

OPINION OF THE COURT

ALITO, Circuit Judge:

Plaintiffs appeal the District Court's decision to terminate jurisdiction over a consent decree pursuant to the Prison Litigation Reform Act. We affirm.

I.

A. The Consent Decree

In 1970, inmates at Pennsylvania's seven state prisons ("the Inmates") brought a class action lawsuit against various state officials pursuant to 42 U.S.C. S 1983. The Inmates alleged unconstitutional conditions of confinement. In 1978, the District Court approved a consent decree settling most of the issues raised in the lawsuit. The District Court retained jurisdiction, and subsequently approved several amendments to the decree.

As amended, the decree governs nearly every aspect of prison management. Among other things, the decree (1) specifies the type of misconduct for which prisoners can be punished; (2) limits the punishment that can be imposed for specific acts of misconduct; (3) restricts prison officials' handling of prisoner mail; (4) guarantees prisoner access to outside publications; (5) establishes health care and sanitation standards;1 (6) imposes restrictive standards for

_____

1. One provision provides that "[a]t each institution a physician will conduct a monthly inspection of all food preparation and food storage

4

prison officials' use of force,[2] restraints, and mace;[3] (7) prescribes detailed procedures for conducting cell searches;[4] (8) gives prisoners the right to possess civilian clothing; and (9) requires the prisons to provide free postage to prisoners. The Defendants contend that the decree has imposed substantial administrative burdens on the Pennsylvania Department of Corrections, and that as a result of the decree prison officials have faced burdensome legal battles, having to defend many of their day-to-day management decisions in federal court.

B. The Termination Provision

Responding to concerns that similar consent decrees were crippling prison systems throughout the country, Congress enacted the Prison Litigation Reform Act (PLRA) in 1996. One provision of the PLRA authorizes defendants in prison condition lawsuits to obtain

> immediate termination of any prospective relief if the
> relief was approved or granted in the absence of a

_____

space, the institution hospital and infirmary, and all other facilities connected with health care and health care delivery." Joint App. at 253. That physician must "submit a report of his inspection to his superintendent immediately after his inspection, and these reports shall be maintained at each institution." Id.

2. The provisions governing the use of force authorize force only where necessary to prevent harm to person or property or to thwart an escape attempt. Joint App. at 256. In contrast, Pennsylvania law provides that prison officials may use physical force to compel compliance with prison rules. See 18 Pa.C.S.A. S 509(5).

3. Prison officials must consult medical personnel before using mace on any prisoner "to determine whether that resident has any disease or condition that would make the use of Mace particularly dangerous." Joint App. at 261. Once authorized to do so, prison officials may only use mace "in a short burst of approximately two (2) seconds in duration," and are required to wait fifteen seconds before firing a second burst.

4. Prison officials must give inmates notice before conducting cell searches, and allow them to be present during any such searches. Inmates subjected to cell searches must "be asked to sign a record to show that he was present during the search or . . . that he [chose] not to be present." Joint App. at 285.

5

finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. S 3626(b)(2) ("the termination provision"). The supervising court may refuse to terminate jurisdiction only if it makes written findings "that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." Id. S 3626(b)(3).

C. The Termination Order

Relying on S 3626(b)(2), Defendants filed a motion to terminate the 1978 consent decree on September 23, 1997. The Inmates argued that the motion was inappropriate and asked the court to hold Defendants in contempt. The Inmates also maintained that the PLRA's termination provision was unconstitutional.

The United States filed a motion to intervene pursuant to 28 U.S.C. S 2403, seeking the opportunity to defend the constitutionality of the PLRA's termination provision. The District Court granted that motion.

The District Court subsequently issued an opinion and order granting the Defendants' motion to terminate the consent decree, and denying the Inmates' motion that the Defendants be held in contempt. Imprisoned Citizens Union v. Shapp, 11 F.Supp.2d 586 (E.D.Pa. 1998). The Inmates promptly filed a motion for reconsideration. The District Court denied that motion. The Inmates then filed the present appeal.

II.

Appellants raise four issues on appeal: (1) whether the PLRA's termination provision violates the constitutional separation-of-powers doctrine, as applied to consent decrees entered before the PLRA's enactment; (2) whether the termination provision violates the equal protection

6

guarantees of the Fifth and Fourteenth Amendments; (3) whether the District Court abused its discretion by refusing to stay Defendants' motion to terminate; and (4) whether the District Court abused its discretion by refusing to hold Defendants in contempt of court.5 We will address each issue in turn.

A. Separation-of-Powers

The Inmates argue that the PLRA's termination provision violates the separation-of-powers doctrine in three respects. First, they argue that the provision requires courts to reopen final judgments in violation of the well-established rule that Congress may not interfere with the final judgments of Article III courts. See Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218 (1995). Second, they claim that the termination provision "mandate[s] the result in a particular case." United States v. Klein, 80 U.S. (13 Wall.) 128, 146- 47 (1871). Third, they maintain that the provision strips the courts of their inherent power to enforce effective remedies in constitutional cases.

We note at the outset that six other circuits have upheld the PLRA against a separation-of-powers challenge. See Hadix v. Johnson, 133 F.3d 940, 943-45 (6th Cir.), cert. denied 118 S.Ct. 2368 (1998); Dougan v. Singletary, 129 F.3d 1424, 1426-27 (11th Cir. 1997); Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 656-57 (1st Cir. 1997); Benjamin v. Jacobson, 124 F.3d 162, 173 (2d Cir. 1997); Gavin v. Branstad, 122 F.3d 1081, 1087 (8th Cir. 1997) reh'g granted (Dec. 23, 1997); Plyler v. Moore, 100 F.3d 365, 371 (4th Cir. 1996). Only the Ninth Circuit has concluded otherwise. Taylor v. United States, 143 F.3d 1178, 1184 (9th Cir. 1998) reh'g granted (Nov. 3, 1998).

_____

5. At oral argument, the Inmates also argued that the PLRA is unconstitutional because it provides plaintiffs a mere 30 days in which to gather evidence necessary to oppose termination under 18 U.S.C. S 3626(b)(3). See Hadix v. Johnson, 144 F.3d 925 (6th Cir. 1998). However, because the Inmates neither raised this argument before the District Court nor discussed it in their briefs on appeal, we do not address it.

7

1. Reopening a Final Judgment

The Inmates contend that S 3626(b)(2) impermissibly
reopens a final judgment. Relying on the Supreme Court's
opinion in Plaut v. Spendthrift Farm, Inc., 514 U.S. 211
(1995), they argue that the provision violates the
separation-of-powers doctrine by allowing Congress to "set
aside . . . final judgment[s]." Id. at 240.

In Plaut, the Court declared unconstitutional a federal
statute that required courts to reopen certain securities
fraud cases that had been dismissed on statute-of-
limitations grounds. Plaut, 514 U.S. at 214-15. The Court
concluded that the statute violated the separation-of-
powers doctrine by interfering with the "judicial Power . . .
to render dispositive judgments." Id. at 219. The Court
explained that the separation-of-powers doctrine generally
forbids Congress from reversing final judgments in a suit
for money damages. Id. At the same time, however, the
Court noted that this rule does not apply to legislation that
merely "alter[s] the prospective effect of injunctions entered
by Article III courts." Id. at 232.

This exception for legislation that alters the prospective
effects of injunctions is not new: "its roots burrow deep into
our constitutional soil." Inmates of Suffolk County Jail v.
Rouse, 129 F.3d 649, 656 (1st Cir. 1997). It can be traced
to Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S.
(18 How.) 421 (1855), where the Supreme Court held that
Congress has the power to alter prospective judgments in
equity.

Wheeling Bridge arose out of an earlier case in which the
Supreme Court found that a particular bridge unreasonably
interfered with navigable waters, and ordered that the
bridge be removed or elevated. See 54 U.S. (13 How.) 518,
626. After the first decision, Congress passed a statute
declaring the bridge to be a lawful structure, establishing it
as a post road, and requiring vessels using the river to
avoid interfering with the bridge. The parties subsequently
returned to the Court when the bridge company sought to
rebuild the bridge after a storm had destroyed the original
structure. Recognizing the impact of the intervening
congressional action, the Court dissolved its injunction.

8

In rejecting the plaintiff's argument that Congress' action was an unconstitutional attempt to override the Court's earlier decision, the Court explained that while Congress cannot alter a judgment at law, it can alter the prospective elements of a judgment in equity by changing the underlying rule of law. Id. at 431–32. The Court reasoned that

> if the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff were for damages, the right to these would have passed beyond the reach of the power of congress. It would have depended, not upon the public right of the free navigation of the river, but upon the judgment of the court. The decree before us, so far as it respect[s] the costs adjudged, stands upon the same principles, and is unaffected by the subsequent law. But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. If, in the mean time, since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced.

Id. at 431–32. Wheeling Bridge therefore stands for the proposition that when Congress changes the law underlying a judgment awarding prospective injunctive relief, the judgment becomes void to the extent that it is inconsistent with the amended law.

The Supreme Court has consistently reaffirmed the validity of this principle, and has even recognized its application to consent decrees. For example, in Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367 (1992), the Court explained that a consent decree may be modified when "one or more of the obligations placed upon the parties has become impermissible under federal law" or when "the statutory or decisional law has changed to make legal what the decree was designed to prevent." Id. at 388.

Similarly, in System Fed'n No. 91 v. Wright, 364 U.S. 642 (1961), the Court noted that

> the District Court's authority to adopt a consent decree comes only from the statute which the decree is intended to enforce. Frequently of course the terms arrived at by the parties are accepted without change by the adopting court. But just as the adopting court is free to reject agreed-upon terms as not in furtherance of statutory objectives, so must it be free to modify the terms of a consent decree when a change in law brings those terms in conflict with statutory objectives. . . . The parties have no power to require of the court continuing enforcement of rights the statute no longer gives.

Id. at 651-52.

Thus, unlike the judgments at issue in Plaut, the consent decree here is not impervious to legislative modification. As a judgment awarding prospective injunctive relief--much like the judgment at issue in Wheeling Bridge--the Inmates' consent decree is necessarily altered every time "a change in law brings [the decree's] terms in conflict with statutory objectives." System Fed'n No. 91, 364 U.S. at 651.

Such a change has occurred here. In enacting the PLRA, Congress exercised its Article I authority to prescribe rules for courts to apply when issuing or perpetuating prospective relief. Those rules do not transgress the separation-of-powers doctrine. If anything, a judicial determination that Congress lacked authority to limit the prospective application of injunctive orders would present a more serious separation-of-powers problem. As the First Circuit recently stated,

> If forward-looking judgments in equity were inviolate, then one of two scenarios would develop: either the legislature would be stripped of the ability to change substantive law once an injunction had been issued pursuant to that law, or an issued injunction would continue to have force after the law that originally gave the injunction legitimacy had been found wanting (and hence, altered). The first of these possible results would work an undue judicial interference with the

10

> legislative process, while the second would create an intolerable tangle in which some laws applied to some persons and not to others. Since the separation of powers principle is a two-way street, courts must be careful not to embrace a legal regime that promotes such awkward scenarios.

Inmates of Suffulk County Jail v. Rouse, 129 F.3d 649, 656-57 (1st Cir. 1997).

A determination that Congress is powerless to alter the courts' authority to award prospective injunctive relief would be especially unwarranted here, since the Supreme Court has commented on the importance of getting the courts out of the prison management business:

> [C]ourts are ill equipped to deal with the increasingly urgent problems of prison management. . . . [T]he problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

Turner v. Safley, 482 U.S. 78, 84-85 (1987) (internal citations and quotation marks omitted). Thus, our decision today is not merely consistent with separation-of-powers principles; it furthers those principles.

Nevertheless, the Inmates maintain that the Wheeling Bridge exception does not apply here because the law underlying the consent decree--which they claim to be the Eighth Amendment--was not amended by the PLRA. In raising this argument, they rely heavily on the Ninth Circuit's opinion in Taylor v. United States, 143 F.3d 1178 (9th Cir. 1998), reh'g granted (Nov. 3, 1998). The Ninth Circuit reasoned that "[e]ven though the district court here

11

. . . was never called upon to decide the factual and legal issues underlying the [inmates'] constitutional claims, it is clear that such claims were resolved by the consent decree, and the Constitution remains the law underpinning the dispute." Applying this reasoning, the Taylor panel concluded that the PLRA "clearly did not""change[ ] the substantive law upon which the parties' consent decree . . . was based." Id. at 1183.

We disagree with the Ninth Circuit's reasoning, and we reject the Inmates' argument. The law underlying the consent decree is not the Eighth Amendment; it is the courts' statutory authority to issue prospective injunctive relief in the absence of an ongoing violation of a federal right. This authority existed when the consent decree was entered, but was withdrawn with the enactment of the PLRA. Accord, Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 657 (1st Cir. 1997) ("The relevant underlying law in this case is not the Eighth Amendment, as there has been no finding of an ongoing constitutional violation."); Plyler v. Moore, 100 F.3d 365, 372 (4th Cir. 1996) ("The Inmates fail to understand that the applicable law is not the Eighth Amendment, but rather is the authority of the district court to award relief greater than that required by federal law.").

This would be a very different case if we were convinced-- as the Taylor panel obviously was--that the PLRA categorically terminates all relief available to "prisoners who claim constitutional violations." Taylor, 143 F.3d at 1183. But the PLRA expressly preserves the courts' authority to remedy violations of prisoners' federal rights. See 18 U.S.C. S 3626(b)(3); see also infra, Section II.A.3. The Inmates therefore cannot maintain that the PLRA curtailed their Eighth Amendment rights. Accordingly, we reject the argument that the PLRA goes beyond amending the law underlying the consent decree.

The Inmates also contend that the Wheeling Bridge exception applies only in cases involving "public" rights. They claim that because the consent decree was intended to protect the "private" rights of individual prisoners, Congress is powerless to amend it. This argument appears

12

to be based on the following language from Wheeling
Bridge:

> [I]t is urged, that the act of congress cannot have the
> effect and operation to annul the judgment of the court
> already rendered, or the rights determined thereby in
> favor of the plaintiff. This, as a general proposition, is
> certainly not to be denied, especially as it respects
> adjudication upon the private rights of parties. When
> they have passed into judgment the right becomes
> absolute, and it is the duty of the court to enforce it.
>
> The case before us, however, is distinguishable from
> this class of cases, so far as it respects that portion of
> the decree directing the abatement of the bridge. Its
> interference with the free navigation of the river
> constituted an obstruction of a public right secured by
> acts of congress.

Wheeling Bridge, 59 U.S. at 431 (emphasis added). At first
glance, this reading appears to support the Inmates'
argument.

However, a more careful analysis shows that the Court's
holding in Wheeling Bridge did not hinge on the distinction
between public and private rights. Instead, it focused on
the difference between prospective injunctive relief and
judgments for damages. As the Wheeling Bridge Court
explained,

> if the remedy in this case had been an action at law,
> and a judgment rendered in favor of the plaintiff for
> damages, the right to these would have passed beyond
> the reach of the power of congress. It would have
> depended, not upon the public right of the free
> navigation of the river, but upon the judgment of the
> court. The decree before us, so far as it respects the
> costs adjudged, stands upon the same principles, and
> is unaffected by the subsequent law. But that part of
> the decree, directing the abatement of the obstruction,
> is executory, a continuing decree, which requires not
> only the removal of the bridge, but enjoins the
> defendants against any reconstruction or continuance.

Wheeling Bridge, 59 U.S. at 431. Thus, the Wheeling Bridge
Court's decision ultimately turned on the nature of the

13

relief, not the source of the right. As the District Court concluded, it is this distinction that "ultimately determines the right of Congress to change the law in such a way that relief must be altered or modified." Imprisoned Citizens, 11 F.Supp.2d at 598. Cf. Plaut, 514 U.S. at 232 (noting that the statute at issue in Wheeling Bridge "altered the prospective effect of injunctions entered by Article III courts" and that "nothing in our holding today calls [Wheeling Bridge] . . . into question."); Polites v. United States, 364 U.S. 426, 438 (1960)(Brennan, J., dissenting) (citing Wheeling Bridge for the proposition that "it was the law long before the promulgation of Rule 60(b) that a change in the law after the rendition of a decree was grounds for modification or dissolution of that decree insofar as it might affect future conduct."). We therefore reject the Inmates' "public rights" argument. Accord, Gavin v. Branstad, 122 F.3d 1081, 1088 (8th Cir. 1997) ("The character of the right involved has nothing to do with the separation-of-powers issue that we have in this case.").

Our holding today would be no different if we were to decide that the Wheeling Bridge exception only applies where public rights are at stake. To whatever extent the consent decree embodies private rights, those rights are unaffected by the PLRA.6 As the Second Circuit recently explained,

> [E]ven assuming that we were to adopt the requirement that--under separation of powers principles--executory judgments must concern a public right in order to be susceptible to legislative revision, that would still not render the termination provision unconstitutional . . . . This is because the . . . right in question in this case relates not to the private rights of the detainees .. . but to the right to have non-federal claims vindicated in a federal forum. . . . Thus, even if we accept the

_____

6. We express no opinion as to whether the Inmates have private rights in the consent decree. See infra, Section II.C.2. We simply note that if they do, those rights exist under state law and are not affected by the PLRA. See 18 U.S.C. S 3626(d) ("The limitations on remedies in this section shall not apply to relief entered by a State court based solely upon claims arising under State law.").

14

> plaintiffs' graft of a `public right' requirement as
> limiting the circumstances in which an executory
> judgment can be legislatively altered, the termination
> provision survives.

Benjamin v. Jacobson, 124 F.3d 162, 172 (2d Cir. 1997),
reh'g granted Dec. 23, 1997. Therefore, even if the Inmates'
"public rights" reading of Wheeling Bridge had some
validity, it would not affect our decision.

Accordingly, we conclude that the PLRA does not
impermissibly mandate the reopening of final judgments.

2. Prescribing a Rule of Decision

Relying on United States v. Klein, 80 U.S. (13 Wall.) 128
(1871), the Inmates also contend that the termination
provision violates the separation-of-powers doctrine by
prescribing the rule of decision in a pending case. In Klein,
the Court held unconstitutional a federal statute enacted
after the Civil War that was designed to prevent pardoned
ex-Confederates from reclaiming seized property. The act
proclaimed that a presidential pardon constituted
conclusive evidence that the pardoned individual had been
disloyal to the United States. Id. at 143-44. It also provided
that a pardon could not be used as evidence of loyalty in a
suit to recover confiscated property from the United States,
and directed the Court to dismiss all recovery cases
pending on appeal in which a pardoned individual had
prevailed. Id. The Court found that in enacting the statute,
Congress was attempting to prescribe the rule of decision
for pending cases in violation of the separation-of-powers
doctrine. Id. at 147.

While the Supreme Court has never determined "the
precise scope of Klein," Plaut, 514 U.S. at 218, "later
decisions have made clear that its prohibition does not take
hold when" Congress merely "amend[s] applicable law." Id.
(quoting Robertson v. Seattle Audubon Soc'y, 503 U.S. 429,
441 (1992)). Thus, if a statute "compel[s] changes in the
law, not findings or results under old law," it merely
amends the underlying law, and is therefore not subject to
a Klein challenge. Robertson, 503 U.S. at 438.

Relying heavily on the Ninth Circuit's opinion in Taylor,
the Inmates argue that the PLRA "direct[s] the outcome of

15

this case and similarly situated pre-PLRA consent decrees." Taylor, 143 F.3d at 1184. We disagree.

While S 3626(b)(2) requires a district court to terminate prospective relief approved in the absence of afinding that the relief is no greater than necessary to correct ongoing violations of federal rights, it does not "direct the outcome of this case and similarly situated pre-PLRA consent decrees." Taylor, 143 F.3d at 1184. Section 3626(b)(2) provides only the standard the district courts must apply, not a rule of decision. It can therefore be said that the PLRA "has left the judicial functions of interpreting the law and applying the law to the facts entirely in the hands of the courts." Gavin v. Branstad, 122 F.3d 1081, 1089 (8th Cir. 1997). Accord Hadix, 133 F.3d at 943 ("The interpretation and application of law to fact and the ultimate resolution of prison condition cases remain at all times with the judiciary."); Inmates of Suffolk County, 129 F.3d at 657-58; ("[T]he relevant underlying law for present purposes is not the Eighth Amendment, but the power of the federal courts to grant prospective relief absent a violation of a federal right. Thus, the PLRA does not run afoul of Klein because it does not tamper with courts' decisional rules--that is, courts remain free to interpret and apply the law to the facts as they discern them."); Benjamin, 124 F.3d at 174 ("[U]nlike the Klein statute, the termination provision does not prevent courts from exercising jurisdiction over those cases that involve violations of . . . federal rights."); Plyler, 100 F.3d at 372 ("In short, S 3626(b)(2) provides only the standard to which district courts must adhere, not the result they must reach.").

We conclude that because S 3626(b)(2) "compel[s] changes in the law, not findings or results under old law," it is not subject to a Klein challenge. Robertson, 503 U.S. at 438.

3. Authority to Enforce Effective Remedies

The Inmates also argue that the termination provision strips the courts of their inherent power to enforce effective remedies in constitutional cases. We reject this argument. Under the PLRA, courts retain their authority to adjudicate

16

constitutional challenges and grant equitable relief to remedy constitutional violations. The PLRA simply requires that such relief be "narrowly drawn," extend "no further than necessary to correct the violation of the Federal right," and be "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. SS 3626(a)(1)(A), (b)(2), and (b)(3).

These standards are consistent with well-established limitations on the courts' authority to issue prospective injunctive relief to remedy constitutional violations. In constitutional cases, "the nature of the violation determines the scope of the remedy." Swann v. Charlotte-Mecklenburg B'd of Educ., 402 U.S. 1, 16 (1971). Likewise, the remedy imposed must be tailored--temporally as well as substantively--to redress the constitutional wrong at issue. See e.g., Lewis v. Casey, 518 U.S. 343, 357 (1996) ("The remedy must of course be limited to the inadequacy that produced the injury-in-fact that the plaintiff has established."); Board of Education of Oklahoma City Public Schools v. Dowell, 498 U.S. 237, 248 (1991) ("[N]ecessary concern for the important values of local control . . . dictates that a federal court's regulatory control .. . not extend beyond the time required to remedy the effects of past [constitutional violations]."). In this sense, the PLRA amounts to little more than a codification of already-existing rules governing judicial interference with prisons.

We disagree with the Ninth Circuit's conclusion that the PLRA "leaves no room for judicial decision-making." Taylor, 143 F.3d at 1184. The statute expressly authorizes the courts to "continue to define the scope of prisoners' constitutional rights, review the factual record, apply the judicially determined constitutional standards to the facts as they are found in the record and determine what relief is necessary to remedy the constitutional violations." Tyler v. Murphy, 135 F.3d 594, 597 (8th Cir. 1998). As a result, the courts will still be capable of "remedy[ing] violations of prisoners' constitutional rights as they have traditionally done in litigated cases." Benjamin v. Jacobson, 124 F.3d 162, 170 (2d Cir. 1997) reh'g granted (Dec. 23, 1997). Accordingly, we conclude that the PLRA's effect on the courts' authority to remedy constitutional violations does not violate the separation-of-powers doctrine.

17

B. Equal Protection

The Inmates also argue that S 3626(b)(2) deprives them of their right to equal protection of the laws. They contend that, as a whole, the PLRA burdens their fundamental right of access to the courts, and therefore must be analyzed under strict scrutiny.

1. Strict Scrutiny

The termination provision does not deny prisoners"a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." Lewis v. Casey, 518 U.S. 343, 351 (1996) (quoting Bounds v. Smith, 430 U.S. 817, 825 (1977)). Rather, it merely restricts the relief that prisoners may obtain from the courts. See Plyler v. Moore, 100 F.3d 365, 373 (4th Cir. 1996). The provision therefore does not infringe any identified fundamental right, and is subject to only rational basis review. See Romer v. Evans, 517 U.S. 620, 631–32 (1996).

2. Rational Basis Scrutiny

The Inmates argue that even if S 3626(b)(2) is not subject to strict scrutiny, it still fails under rational basis review. Specifically, they claim that the provision discriminates against prisoners, and is not rationally related to a legitimate governmental interest. We are not persuaded.

While S 3626(b)(2) admittedly singles out certain prisoner rights cases for special treatment, it does so only to advance unquestionably legitimate purposes––to minimize prison micro-management by federal courts and to conserve judicial resources. See Lewis, 518 U.S. at 349 ("[I]t is not the role of courts, but that of the political branches, to shape the institutions of government in such fashion as to comply with the laws and the Constitution."); see also City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 440–41 (1985) (explaining that a statute subject to rational basis review will survive an equal protection challenge "if the classification drawn by the statute is rationally related to a legitimate state interest."). The termination provision therefore satisfies the demands of equal protection.

18

C. The District Court's Denial of the Inmates' Motion
     to Stay

The Inmates also argue that the District Court abused its
discretion by refusing to stay the termination order until
such time as "the courts of Pennsylvania agree to enforce
the [consent decree]." Brief for Appellants at 46. In making
this argument, the Inmates rely heavily on the Second
Circuit's novel theory that (a) consent decrees embody
"contracts arising under state law" and (b) federal courts
therefore cannot terminate a consent decree under
S 3626(b)(2) without first securing parties' contractual
rights under that decree. See Benjamin v. Jacobson, 124
F.3d 162, 178-79 (2d Cir. 1997), reh'g granted (Dec. 23,
1997).

1. Clear Statutory Mandate

We cannot accept this argument without ignoring the
plain language of the PLRA. The statute entitles defendants
to "immediate termination of any prospective relief" absent
a finding of a current and ongoing violation of federal law.
See 18 U.S.C. S 3626(b)(2), (b)(3). It also broadly defines
"prospective relief " as including "all relief other than
compensatory monetary damages," 18 U.S.C. S 3626(g)(7).7
Because the 1978 consent decree unquestionably fits
within that definition, and because the district court made
no findings of a current and ongoing violation of federal
law, the law demands nothing less than the immediate
termination of the consent decree. The Inmates cite no
principle of law that allows us to disregard this
unambiguous statutory mandate in order to preserve the
consent decree. In effect, the Inmates have asked us to turn
the termination provision on its head, and replace S 3626(b)
with language prohibiting termination of consent decrees
unless or until a state court "agrees to enforce" them. We
decline their invitation to do so.

_____

7. The PLRA defines "relief " as "all relief in any form that may be
granted
or approved by the court, and includes consent decrees, but does not
include private settlement agreements." 18 U.S.C.S 3626(g)(9). It further
defines "consent decree" as "any relief entered by the court that is based
in whole or in part upon the consent or acquiescence of the parties, but
does not include private settlements." 18 U.S.C.S 3626(g)(1).

2. No Current Unconstitutional Impairment

We also reject the Inmates' claim that since they "might" have contractual rights in the consent decrees under Pennsylvania law, and Defendants "might" refuse to enforce such rights, the District Court must maintain jurisdiction over the decrees in order to prevent Defendants from unconstitutionally impairing their own contractual obligations. Brief for Appellants at 45 (quoting Benjamin, 124 F.3d at 179). Mere speculation that Defendants might refuse to honor alleged contractual obligations is insufficient to support a finding of "current and ongoing violations of [a] Federal right." 18 U.S.C. S 3626(b)(3). The District Court therefore had no statutory basis for maintaining jurisdiction over the consent decrees.

If the Inmates have valid contractual claims that survive termination, such claims are "based solely upon .. . [Pennsylvania] law," and are not affected by the PLRA. 18 U.S.C. S 3626(d) ("The limitations on remedies in this section shall not apply to relief entered by a State court based solely upon claims arising under State law."). The Inmates are therefore free to pursue relief in the Pennsylvania courts. It is not our province to speak to the validity of any "claims arising under [Pennsylvania] law," or to award relief therefor. 18 U.S.C. S 3626(d). It is our province, however, to decide whether there is any basis for the Inmates' argument that the District Court should have stayed its termination order until such time as"the courts of Pennsylvania agree to enforce the [consent decree]." Brief for Appellants at 46. There is not. Accordingly, we conclude that the district court's denial of the Inmates motion to stay did not amount to an abuse of discretion.

D. Defendants' Past Non-Compliance

Finally, the Inmates argue that the District Court abused its discretion by refusing to hold Defendants in contempt for failing to comply with portions of the consent decree in the past. More to the point, they claim that the District Court should have denied Defendants' motion to terminate as a remedy for contempt.

Again, we cannot accept this argument without ignoring the express language of the PLRA. Congress could have

20

authorized the courts to maintain jurisdiction over a consent decree where the defendants have failed to comply with the decree. However, it did not. Instead, Congress chose to allow the courts to maintain jurisdiction only where defendants are guilty of "current and ongoing" violations of a federal right. 18 U.S.C. S 3626(b)(3).

Moreover, denying Defendants' motion to terminate would have been an inappropriate remedy for civil contempt because it would have "had no coercive effect." Harris v. City of Philadelphia, 47 F.3d 1311, 1328 (3d Cir. 1995) (holding that denying a motion to terminate under the PLRA was not a proper remedy for civil contempt related to the city's past non-compliance with a consent decree). We therefore conclude that the District Court's refusal to cite Defendants with contempt did not amount to an abuse of discretion.

III.

The Inmates have not established that the PLRA is unconstitutional, nor have they established that the District Court abused its discretion in any way. Accordingly, we affirm.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

21