ALLEN COUNTY COUNCIL, and its Individual Members, The Allen County Commissioners, and its Members, The Treasurer of Allen County and the Auditor of Allen County, Appellants–Defendants,

v.

Wayne J. STELLHORN, James E. Wall, Sam Hall and Don Hall II, Appellees–Plaintiffs.

No. 02A04–9907–CV–305.

Court of Appeals of Indiana.

June 13, 2000.

Transfer Denied Aug. 31, 2000.

G. William Fishering, Stacey L. Katz, Fort Wayne, Indiana, Attorneys for Appellants.

William T. Hopkins, John C. Theisen, Fort Wayne, Indiana, Attorneys for Appellees.

## OPINION

GARRARD, Senior Judge

### Case Summary

The Allen County Council appeals the trial court's order finding it in contempt for adopting an ordinance which permitted the county to use funds from the Allen County Food and Beverage Tax to renovate the Allen County War Memorial Coliseum after a former county council had allegedly agreed, pursuant to an agreed court order, that it would use the funds only for payment of a debt incurred during a renovation project conducted in the 1980s.

We reverse.

### Facts and Procedural History

In 1986, the Indiana Legislature enacted the Allen County Food and Beverage Tax, which allowed a qualified "fiscal body of a county" to "adopt an ordinance to impose an excise tax, known as the county food and beverage tax," on certain transactions. *See* IND.CODE §§ 6–9–23–1 to –9. Pursuant to the statute, if a qualified county elected to impose the tax, the county treasurer was required to establish a "coliseum expansion fund" and to deposit all funds received from the tax in that fund upon receipt. I.C. § 6–9–23–8(a). The purposes for which the funds could be appropriated were limited to "the acquisition, improvement, remodeling, or expansion of an athletic and exhibition coliseum in existence before the effective day of an ordinance adopted under section 3 of [chapter 23]" or "to retire any bonds issued, loans obtained, or lease payments incurred under IC 36–1–10 (referred to in this chapter as "obligations") to remodel, expand, improve, or acquire an athletic and exhibition coliseum in existence before the effective day of an ordinance adopted under section 3 of this chapter." I.C. § 6–9–23–8(a)(1), (2).

On April 14, 1986, the Allen County Council adopted Ordinance 86–4–10–2 in accordance with I.C. § 6–9–23–1 in order to raise funds to repair and expand the Allen County War Memorial Coliseum (coliseum). The ordinance provided that the funds from the food and beverage tax were to be deposited in a coliseum expansion fund and used exclusively "for the repair and expansion of the Allen County War Memorial Coliseum." Record at 22. After the Food and Beverage Tax went into effect on July 1, 1986, substantial repair and expansion work was performed on the coliseum and completed in 1989. The cost of the repairs was covered by bonds payable by food and beverage tax funds. Record at 32.

Several years later in February of 1992, during a meeting of the county council, the chairman of the War Memorial Coliseum Board of Trustees, Jack Lehman, appeared before the council to request permission to build a baseball stadium. Lehman proposed that two million dollars from the Coliseum Expansion Fund be used to finance the construction of the stadium, which would cost approximately five million dollars. At the conclusion of the meeting, the council voted to appropriate two million dollars of the food and beverage tax funds for the construction of the stadium and grounds.

Following the county council's approval of the use of the coliseum funds, Wayne Stellhorn, James Wall, Sam Hall and Don Hall II, residents of Allen County (petitioners), filed a complaint for declaratory relief, alleging that the county council's use of the Food and Beverage Tax funds was improper. Petitioners asked the court to declare that the construction of the baseball stadium did not qualify as a repair or expansion of the coliseum in accordance with the food and beverage tax or the ordinance.

Following negotiations, the parties entered into a settlement agreement on March 17, 1994. Pursuant to that agreement, Allen County was prohibited from making "further appropriations or expenditures from the Coliseum Expansion Fund ... except for the purpose of paying

Obligations as set forth in I.C. 6–9–23–8(a)(2)" including rent under the March 1, 1992 Amending and Consolidating Contract of Lease between Fort Wayne National Bank and Allen County, prepayment of rent under the December 5, 1998 Contract for Lease between Allen County War Memorial Building Corporation and Allen County and prepayment of rent under the June 15, 1987 Contract of Lease between the Allen County War Memorial Building Corporation and Allen County. Record at 36–37. Allen County was further prohibited from taking "any action that ha[d] the effect of amending or changing Ordinance No. 86–4–10–2" or to "use money in the Coliseum Expansion Fund for any other purpose than that set forth herein." Record at 38.

In 1998, the General Manager of the Allen County War Memorial Coliseum presented the need for additional coliseum improvements to the Indiana legislature. Although an amendment to the Sports Development Zone legislation was initially proposed, the Indiana General Assembly decided to amend the Allen County Food and Beverage Tax statute, effective July 1, 1998, as follows:

Sec. 8. (a) If a tax is imposed under section 3 of this chapter, the county treasurer shall establish a coliseum expansion fund. The county treasurer shall deposit in this fund all amounts received from the tax imposed under this chapter. Money in this fund may be appropriated only:

(1) for *any* acquisition, improvement, remodeling or expansion of:

(A) an athletic and exhibition coliseum in existence before the effective day of an ordinance adopted under section 3 of this chapter; or

(B) *if approved by an ordinance of the county fiscal body (other than an appropriation ordinance), an athletic and exhibition coliseum*

*in existence before January 1, 1998; and*

(2) to retire any bonds issued, loans obtained, or lease payments incurred under IC 36–1–10 (referred to in this chapter as "obligations") to remodel, expand, improve, or acquire:

(A) an athletic and exhibition coliseum in existence before the effective day of an ordinance adopted under section 3 of this chapter; or

(B) *if approved by an ordinance of the county fiscal body (other than an appropriations ordinance), an athletic and exhibition coliseum in existence before January 1, 1998.*

(b) Obligations entered into for the acquisition, expansion, remodeling, and improvement of an athletic and exhibition coliseum shall be retired by using money collected from a tax imposed under this chapter.

(c) *Money collected under this chapter and set aside for debt reserve before July 1, 1998, may not be used for the purposes set forth in subsection (a)(1).*

I.C. § 6–9–23–8(a)(1), (2) (emphasis to amended provisions). The effect of the amendment was to allow the county council to adopt an ordinance which would allow for the appropriation of additional funds received after July 1, 1998, for future renovations to the coliseum.

On April 15, 1998, the Allen County Board of Commissioners voted to accept a proposal for expansion of the coliseum and directed the Auditor to call a special meeting of the Allen County Council. On August 17, 1998, the county council enacted Ordinance 98–7–16–1 which allowed food and beverage tax revenue received after July 1, 1998, to be used for improvements to the coliseum.

In response to this action, Sam Hall and Don Hall II [1] filed a verified motion for

---

1. At the time the contempt petition was filed, Wayne J. Stellhorn and James E. Wall were   deceased.

rule to show cause for indirect contempt. They claimed that by enacting the ordinance, the Allen County Council willfully violated the agreed court order. Allen County responded by arguing that they were not in indirect contempt because the parties' intent in drafting the agreed order of relief was to establish Allen County's responsibilities under the then-existing Food and Beverage Tax statute and not to establish the purpose for which food and beverage revenues could ever be used under a future version of the statute.

Following an evidentiary hearing held on May 8, 1999, the trial court agreed that the intent of the 1994 Settlement Agreement was to clarify and establish the rights and duties of the parties as they existed under the 1986 statute. However, the court concluded that the Allen County Council acted contemptuously by enacting the 1998 ordinance because in doing so, it amended or changed the 1986 ordinance in violation of the 1994 Settlement Agreement. It expressly found that the legislature's 1998 amendment to the enabling act was irrelevant to the issue of contempt. The trial court specifically noted that although the county council was not prohibited from approving the renovation project, it could not use food and beverage tax funds to finance the project. The court further noted that the Allen County Council could purge itself of the contempt by "rescinding the last paragraph of its Ordinance 98–7–16–1 which authorized expenditures of Allen County food and beverage tax proceeds to pay for the proposed future Coliseum improvements." Record at 243.

On May 28, 1999, the Allen County Council filed a petition for interlocutory appeal which was certified by the trial court on June 7, 1999. This court accepted jurisdiction pursuant to Ind. Appellate Rule 4(B)(6) on August 9, 1999.

### Discussion and Decision

█ The Allen County Council contends that the trial court erroneously found that it willfully disobeyed the 1994 Agreed Order. A person will be found to be in indirect contempt if he willfully disobeys a lawfully issued court order. IND. CODE § 34–47–3–1; *Mitchell v. Stevenson,* 677 N.E.2d 551, 558 (Ind.Ct.App.1997), *trans. denied.* However, if a party shows that the facts, even if true, do not constitute contempt or denies, explains or confesses and avoids the facts, to show that no contempt was intended, he shall be acquitted. I.C. § 34–47–3–6. The determination of whether a party is in contempt of court is a matter afforded to the trial court's discretion. *Mitchell,* 677 N.E.2d 551, 558. We reverse the trial court's finding only for an abuse of discretion. *Id.* at 558–59.

Here, the trial court found that the county council had willfully disobeyed the agreed court order by enacting the 1998 Ordinance approving use of the food and beverage tax after July 1, 1998, because the act of adopting the 1998 ordinance had the effect of amending or changing the 1986 ordinance, something which the 1994 agreed court order prohibited the county council from doing. In particular, the court noted that the 1986 ordinance provided that the food and beverage tax was to be appropriated for retirement of the debt that had been incurred in the prior renovation project and that the tax was to terminate two years after the debt was paid. Thus, the court concluded that the "1998 Ordinance approving another Coliseum improvement project and approving county food and beverage tax proceeds to fund it" constituted an amendment or change in the 1986 ordinance because it allowed funds to be used for a purpose other than repayment of debt. Record at 239.

█ It is beyond dispute that the 1998 ordinance in fact constituted a departure from the 1986 ordinance and the terms of the agreed order. The issue clearly depends upon the necessary impact of the 1986 amendments to the Allen County Food and Beverage Tax statute.

We find two principles are controlling. First, neither the county commissioners nor the council had the power to limit the discretionary functions of its successors.. *See State ex rel. Scott v. Hart,* 144 Ind. 107, 111, 43 N.E. 7, 8 (1896) ("[I]t may be correctly said that [a county] board of commissioners cannot by contract preclude itself or its successors from the right and duty to exercise the powers given it by statute, when, in its judgment or discretion, it is deemed necessary so to do."); 56 Am.Jur.2D *Municipal Corporations* § 154 (1971) (noting that governmental and legislative functions must be transferred unimpaired to successors); *see also Pippenger v. City of Mishawaka,* 119 Ind.App. 397, 403, 88 N.E.2d 168, 171 (1949) (finding that municipal corporation may not bargain away its right to exercise discretion). That is to say, that in settling the lawsuit the county could properly agree to the interpretation of its existing authority and application of its existing ordinance, but it could not bind itself or its successors concerning the possible future grant of further discretionary powers by the state legislature.

Secondly, the provisions of consent decrees and judgments having *prospective* application become void to the extent that they conflict with the underlying law *when that law is changed. Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. (18 How.) 421, 15 L.Ed. 435 (1855); *Imprisoned Citizens Union v. Ridge,* 169 F.3d 178 (3d Cir.(PA) 1999). In addressing why consent decrees and agreed judgments are not impervious to legislative modification, the court in *Imprisoned Citizens Union* said,

If forward-looking judgments in equity were inviolate, then one of two scenarios would develop: either the legislature would be stripped of the ability to change substantive law once an injunction had been issued pursuant to that law, or an issued injunction would continue to have force after the law that originally gave the injunction legitimacy had been found wanting (and hence, altered).

169 F.3d at 185 (quoting *Inmates of Suffolk Co. Jail v. Rouse,* 129 F.3d 649, 656–57 (1st. Cir.1997)).

Accordingly, it appears that pursuant to the 1998 statutory amendment the council was given the discretionary power to appropriate monies received after July 1, 1998 for further improvement, etc. of the coliseum. It is worth noting that the amendments did not attempt to change the effect or application of the old law.

It would have been better practice for the county to have petitioned to modify or clarify the 1994 judgment to recognize the effect of the amendments. Even so, the grant of additional authority by the legislature in 1998 served to vitiate an element necessary for the council's adoption of the appropriation ordinance to constitute contempt of the prior court order.

The finding and judgment are therefore reversed.

DARDEN, J., and FRIEDLANDER, J., concur.